UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY HERNANDEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) | Case No. EDCV 09-2209 JC <br><br> MEMORANDUM OPINION AND <br> ORDER OF REMAND |

## I. SUMMARY

On December 7, 2009, plaintiff Nancy Hernandez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 17, 2009 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") erred in assessing the medical opinion evidence.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 22, 2007, plaintiff filed applications for Supplemental Security Income and Disability Insurance benefits. (Administrative Record ("AR") 8, 109, 116). Plaintiff asserted that she became disabled on May 15, 2007, due to: "bipolar," stress, depression, nervousness, and anxiety. (AR 109, 116, 131). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 13, 2009. (AR 31-57).

On September 17, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: affective disorder and a history of methamphetamine abuse (AR 10); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 10); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations[1] (AR 11); (4) plaintiff could perform her past relevant work as a cashier, courtesy clerk and front counter worker (AR 18); and (5) plaintiff's allegations regarding her limitations were not fully credible (AR 13-14).

The Appeals Council denied plaintiff's application for review. (AR 1-3).

---

[1] More specifically, the ALJ determined that although able to perform a full range of work at all exertional levels, plaintiff was precluded from jobs that required safety operations or responsibility for the safety of others; hyper-vigilance; "high-quota production-rate pace (*i.e.*, rapid assembly line work where co-workers work side-by-side and the work of one effects [sic] the work of the other)"; and any direct exposure to illegal drugs. (AR 11).

III.   **APPLICABLE LEGAL STANDARDS**

   A.   **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in

|   |   |
|---|---|
| 1 | significant numbers in the national economy?  If so, the |
| 2 | claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///
///

## IV. DISCUSSION

### A. The ALJ Erred in Assessing a State Agency Physician's Opinion and the Court Cannot Find Such Error to Be Immaterial or Harmless

Plaintiff contends that a reversal or remand is appropriate because the ALJ erred in assessing the opinions of Dr. Williams, a non-examining state agency psychiatrist and, as a result, the ALJ's residual functional capacity assessment lacked substantial evidence. This Court agrees.

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2] See id.

"The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their

---

[2]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

decisions." SSR 96-6p; see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . ."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").[3]

### 2. Pertinent Facts

On September 12, 2007, Dr. Williams completed a Mental Residual Functional Capacity Assessment ("MRFC") form which reflects that plaintiff was moderately limited in her ability to (i) understand and remember detailed instructions; (ii) carry out detailed instructions; (iii) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (iv) interact appropriately with the general public. (AR 283-84). Dr. Williams stated that due to plaintiff's limitations, "she would do best in a work setting where extensive interpersonal interaction is not required, such as a non-public, unskilled setting." (AR 285; see also AR 287). On February 21, 2008, Dr. Kevin D. Gregg, a non-examining state agency psychiatrist, affirmed Dr. Williams' findings on reconsideration. (AR 293-94).

In his September 17, 2009 decision, the ALJ rejected the state agency reviewing psychiatrists' assessment that plaintiff "should be limited to unskilled, non-public work." (AR 18) (citing Exhibits 4F [AR 283-85], 5F [AR 286-87]).

---

[3]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a)).

More specifically, the ALJ stated that Dr. Williams' September 12, 2007 opinions as to plaintiff's moderate functional limitations were "reasonable and [] supported by the objective evidence," but he nonetheless rejected Dr. Williams' opinion that such limitations would restrict plaintiff to work in a non-public, unskilled setting. (AR 18). The ALJ reasoned only that the assessed moderate functional limitations were "not enough to support a finding of a residual functional capacity for only unskilled, non-public work." (AR 18). With respect to the other record medical opinion evidence, the ALJ gave little weight to any "treating source opinions and conclusions," because such opinions appeared to be based solely on plaintiff's own subjective statements as to her symptoms. (AR 17). The ALJ also rejected the opinions expressed in a January 30, 2008 letter written by Jennifer Doswell, a treating licensed clinical social worker ("LCSW"), because an LCSW is not "an acceptable medical source," and any conclusion in the letter that plaintiff was disabled involved a determination that was reserved exclusively to the Commissioner. (AR 17). Accordingly, as noted above, the ALJ did not include a limitation to unskilled, non-public work in plaintiff's residual functional capacity assessment. (AR 11).

At the administrative hearing, the ALJ posed a hypothetical question to the vocational expert which included only those limitations noted in the ALJ's residual functional capacity assessment. (AR 11). In response, the vocational expert testified that a claimant with the stated limitations could still perform the jobs of cashier, courtesy clerk, and front counter worker. (AR 54-56, 197). The ALJ adopted the vocational expert's testimony and, as noted above, determined that plaintiff was not disabled because she retained the residual functional capacity to perform her past relevant work as a cashier, courtesy clerk, and front counter worker. (AR 18-19).

///
///

### 3. Analysis

As plaintiff correctly contends, the ALJ's assessment of Dr. Williams' opinions was legal error. The ALJ's only stated reason for rejecting Dr. Williams' restriction to unskilled, non-public work was that plaintiff's moderate functional limitations – limitations that the ALJ determined to be "reasonable and []  supported by the objective evidence" – did not justify a restriction to unskilled, non-public work. (AR 18). In light of the fact that the ALJ effectively rejected all other medical source opinions, it appears that the ALJ's rejection of Dr. Williams' opinion, and conclusion that plaintiff retained the residual functional capacity to do more than unskilled, non-public work, were based solely on the ALJ's own lay interpretation of plaintiff's treatment records. However, "[t]he ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert." Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003); see also Gonzalez Perez v. Secretary of Health & Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may not substitute his interpretation of laboratory reports for that of a physician). To the extent the ALJ found Dr. Williams' opinions ambiguous or otherwise inadequate, the ALJ should have contacted Dr. Williams to resolve any perceived conflict, or called a medical expert to assist in determining the extent to which the medical records reflected any limitation on plaintiff's ability to work. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted) (Although plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); see, e.g., Armstrong v. Commissioner of Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998) (where there were diagnoses of mental disorders prior to the date of disability found by the ALJ, and evidence of those disorders even prior

to the diagnoses, the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling).[4]

The Court cannot find the ALJ's error harmless.[5] If, as Dr. Williams opined, plaintiff should be restricted to unskilled, non-public work, the hypothetical question the ALJ posed to the vocational expert – which omitted any such restriction – was incomplete. See Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant.) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted). Therefore, the vocational expert's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step four that plaintiff was not disabled. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) ("The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.") (citing Embrey, 849 F.2d at 422). Such an error is material, particularly since a limitation to unskilled, non-public work is inconsistent with the ability to perform plaintiff's past relevant work as a cashier,

///
///

---

[4] Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. See 20 C.F.R. §§ 404.1519a, 416.919a.

[5] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout, 454 F.3d at 1054-56 (discussing contours of application of harmless error standard in social security cases).

courtesy clerk, or front counter worker. Each such position requires substantial interaction with the public.[6]

## V.   CONCLUSION[7]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[8]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 30, 2010

                                                     /s/
                                 Honorable Jacqueline Chooljian
                                 UNITED STATES MAGISTRATE JUDGE

---

[6] A "cashier-checker" is required to, among other things, "[operate a] cash register to itemize and total [a] customer's purchases in grocery, department, or other retail store[s]." Dictionary of Occupational Titles ("DOT") § 211.462-014. A courtesy clerk ("bagger") "[b]ags groceries at [a] grocery store," "carries packed sacks, or places sacks in [a] grocery cart, and pushes [the] cart to [a] customer's vehicle," and "[p]laces groceries into [a] customer's vehicle." DOT § 920.687-014. A front counter worker ("fast-food worker") is required to "serve[] customer[s] of [a] fast food restaurant." DOT § 311.472-010.

[7] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[8] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).